# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FARRAR & BALL, LLP,<br>　　　Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. H-16-3341 |
| | § | |
| NICOLE HUDSON,<br>　　　Defendant/Third-Party Plaintiff, | §<br>§<br>§ | |
| | § | |
| v. | § | |
| | § | |
| WESLEY T. BALL, KYLE W.<br>FARRAR, DAVID ROMAGOSA, JR.,<br>and RHONDA HERBERT,<br>　　　Third-Party Defendants. | §<br>§<br>§<br>§<br>§ | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 54]

filed by Counter-Defendant Farrar & Ball, LLP ("Farrar & Ball" or the "Firm") and

Third-Party Defendants Wesley T. Ball, Kyle W. Farrar, David Romagosa, Jr., and

Rhonda Herbert (collectively, "Movants"). Movants seek summary judgment on the

claims asserted by Counter-Plaintiff Nicole Hudson in her Third Amended Answer

and Counterclaims [Doc. # 1-3]. Hudson filed a Response [Doc. # 57], and Movants

filed a Reply [Doc. # 60].

Also pending is Hudson's "Partial Motion for Summary Judgment" [Doc. # 55].

Hudson seeks summary judgment on her breach of contract claim. Farrar & Ball and

the Third-Party Defendants filed a Response [Doc. # 62]. Hudson neither filed a reply nor requested an extension of the reply deadline.

The Court has carefully reviewed the record and the applicable legal authorities. Based on that review, the Court **grants** the Motion for Summary Judgment filed by Farrar & Ball and the Third-Party Defendants as to the federal claims. Having disposed of the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As a result, the Court **denies without prejudice** Hudson's "Partial Motion for Summary Judgment."

## I.    <u>BACKGROUND</u>

Hudson worked as a paralegal at the Farrar & Ball law firm from January 2013 until March 2016. During most of that time, she worked with Third-Party Defendant Romagosa, a non-equity attorney at the Firm. *See* Declaration of Kyle W. Farrar ("Farrar Decl."), Exh. A to Motion for Summary Judgment, ¶ 6.

In May 2015, Hudson spoke with Romagosa regarding a referral bonus equal to 20% of the attorneys' fees collected on a case. Specifically, Hudson believed she was entitled to the referral bonus for having referred her daughter's personal injury case to the Firm. Romagosa informed Hudson via email that the Firm did not – indeed, could not – share attorneys' fees with non-lawyers. In September 2015,

Hudson met with Farrar regarding the 20% bonus. Farrar similarly informed Hudson that she was not owed a 20% referral fee.

In October 2015, at a Farrar & Ball bowling social event, Farrar suggested a bet on the bowling scores. Hudson responded that she was just going to play one game, win the money, and leave. Farrar responded, "Nicole, you can't beat me at nothing you broke ass bitch." When he realized that Hudson was offended, Farrar said, "you know I'm just playing with you" and apologized to Hudson. Farrar later discussed the incident with Debbie Brooks, the Firm's bookkeeper, to inquire whether anyone else at the bowling event had been offended by the comment. Brooks responded that nobody else was offended, and Farrar stated "If I only offend one I call that a victory." Hudson testified in her deposition that she began looking for a new job after the bowling event. *See* Deposition of Nicole Hudson ("Hudson Depo."), Exh. B to Motion for Summary Judgment, p. 13.

Also in October 2015, Farrar & Ball learned that a prior bookkeeper credited sick leave and vacation days toward time worked when calculating overtime pay. Farrar revised the Firm's practice to ensure that only hours actually worked by the employee were credited toward determining entitlement to overtime compensation. Hudson complained to Farrar about this decision. Farrar believed that Hudson's work performance and attitude declined after the change regarding overtime compensation.

Other employees also complained to Farrar that Hudson was upset about the change. *See* Farrar Decl., ¶ 14.

In February 2016, Farrar was continuing to receive reports from employees that Hudson was saying negative things about the Firm, complaining specifically about the change to the overtime policy. *See id.*, ¶ 16. On February 16, 2016, Farrar sent an email informing Romagosa that he had decided to terminate Hudson's employment. *See id.*

The next day, February 17, 2016, Farrar concluded – based on a comparison of time records and parking garage records for Hudson and two Caucasian employees – that Hudson claimed to have worked hours that she did not actually work. *See id.*, ¶ 17.

In late February or early March 2016, Farrar & Ball employee Gary West gave Hudson emails written by Romagosa. *See* Hudson Depo. at p. 154. Emails dated September 14 and September 17, 2013, were written following Romagosa's attack by an African-American, an attack that resulted in Romagosa's hospitalization. These emails used a racial slur to refer to the attacker. In another email dated February 18, 2014, Romagosa used a racial slur in an email string regarding the hiring of someone named "Vera." These emails do not relate to Hudson or her employment with Farrar & Ball.

Hudson alleges that on February 17, 2016, Romagosa referred to her under his breath using a racial slur. *See id.* at 77; *see also* EEOC Charge, Exh. 6 to Hudson's Response [Doc. # 59], p. 2.

In early March 2016, Farrar & Ball paralegal (and Third-Party Defendant) Rhonda Herbert informed Hudson that she (Hudson) was going to be fired and the two paralegals discussed Hudson filing a Charge of Discrimination. *See* Hudson Depo. at p. 175. On March 3, 2016, following this conversation, Hudson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Farrar & Ball terminated Hudson's employment on March 11, 2016.

On June 7, 2016, Farrar & Ball sued Hudson in Texas state court for tortious interference and civil theft.[1] In Hudson's Third Amended Answer and Counterclaims, Hudson asserted state law claims and, for the first time, asserted claims under 42 U.S.C. § 1983, as well as race discrimination, hostile work environment, and retaliation claims under 42 U.S.C. § 1981 and Title VII. Movants removed the case to federal court. After the close of discovery, the pending motions were filed. The motions have been briefed and are now ripe for decision.

---

[1] Neither of the pending summary judgment motions addresses Farrar & Ball's state law claims against Hudson.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).   The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).   The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."

*Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th

Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).  Instead, the

nonmoving party must present specific facts which show "the existence of a genuine

issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N.*

*Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks

omitted).  In the absence of any proof, the court will not assume that the non-movant

could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l*

*Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and

must disregard all evidence favorable to the moving party that the jury is not required

to believe.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing

*Reaves Brokerage Co.*, 336 F.3d at 412-13).  The Court is not required, however, to

accept the nonmovant's conclusory allegations, speculation, and unsubstantiated

assertions which are either entirely unsupported, or supported by a mere scintilla of

evidence.  *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at

1075.  Affidavits cannot preclude summary judgment unless they contain competent

and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med.*

*Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the

nonmovant fails even to refer to it in the response to the motion for summary

judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. July 7, 2011).

## III.    SECTION 1983 CLAIM

It has long been, and continues to be, the clearly-established law that in order to state a claim under § 1983, a plaintiff must demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012); *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

Hudson has failed to present evidence that any Counter-Defendant or Third-Party Defendant was acting under color of state law. As a result, Movants are entitled to summary judgment on Hudson's § 1983 claim.

## IV.    SECTION 1981 AND TITLE VII CLAIMS

Hudson asserts race discrimination, hostile work environment, and retaliation claims under both 42 U.S.C. § 1981 and Title VII. Claims under Title VII and § 1981 are analyzed under the same legal standard.[2] *See Turner v. Kansas City S. Ry. Co.*,

---

[2]     One exception is that an employee can assert a § 1981 claim only against a defendant
(continued...)

675 F.3d 887, 891 (5th Cir. 2012), as revised (June 22, 2012); *see also Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (retaliation claim); *Glaskox v. Harris Cty., Tex.*, 537 F. App'x 525, 528 (5th Cir. Aug. 2, 2013) (race discrimination claim); *Vital v. Nat'l Oilwell Varco*, 2014 WL 4983485, *13 (S.D. Tex. Sept. 30, 2014) (hostile work environment claim). As a result, the Court will not address the employment claims under § 1981 and Title VII separately.[3]

For race discrimination and retaliation claims, the familiar *McDonnell Douglas* framework applies. *See McDonnell Douglas Corp., v. Green*, 411 U.S. 792 (1973).

---

[2]   (...continued)
who exercises supervisory authority over the employee. This exception is based on "§ 1981's focus on the right to contract and the contractual relationship[, which] limits § 1981 non-employer liability to 'those who have authority to act on behalf of the employer in making and enforcing the employer's contracts.'" *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 865 (N.D. Tex. 2008) (quoting *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999)). In this case, Herbert was a paralegal co-worker. Although Hudson performed work for Romagosa and he had the authority to assign her work, the evidence in uncontroverted that he lacked authority regarding employment decisions such as compensation or firing. As a result, Herbert and Romagosa are entitled to summary judgment on Hudson's § 1981 claims on this basis also.

[3]   An "employer" is defined for purposes of Title VII as having at least 15 employees. *See* 42 U.S.C. § 2000e(b). This is an element of Hudson's Title VII claims, not a jurisdictional requirement. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006); *StarTran, Inc. v. Occupational Safety & Health Review Comm'n*, 290 F. App'x 656, 663 (5th Cir. Aug. 11, 2008). In the Joint Discovery/Case Management Plan [Doc. # 7], Farrar & Ball asserts that it is not an "employer" for purposes of Hudson's Title VII claims because it employed only 11 employees. In his Declaration, Farrar states that the Firm has never employed more than fifteen persons. *See* Farrar Decl., ¶ 2. Movants do not, however, seek summary judgment on the Title VII claims on this basis.

The plaintiff must first establish a *prima facie* case. *See Brooks v. Lubbock Cty. Hosp. Dist.*, 373 F. App'x 434, 436 (5th Cir. Apr. 12, 2010). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory (or non-retaliatory) explanation for its decision. *See id.* "If the employer provides such an explanation, the inference of discrimination falls away and the burden shifts back to the employee to demonstrate the explanation is a mere pretext for discrimination or retaliation." *Id.* "While the ultimate burden of proving discrimination remains with the plaintiff throughout the case, within the context of a summary judgment motion, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 203 (5th Cir. Dec. 15, 2008) (citing *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991)).

## A. <u>Race Discrimination Claim</u>

***<u>Prima Facie Case</u>***.– To establish a *prima facie* case of race discrimination through indirect evidence,[4] Hudson must demonstrate that she (1) is a member of a

---

[4] Hudson argues in her Response that she has direct evidence of race discrimination, specifically racial slurs and abusive language. Workplace comments are considered direct evidence of discrimination only if they are "(1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the
(continued...)

protected class; (2) was qualified for her position at the Firm; (3) was discharged or suffered some adverse employment action; and (4) either was replaced by someone outside the protected class or was otherwise treated less favorably than other similarly situated employees outside the protected class. *See Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016). It is undisputed that Hudson, an African-American, is a member of a protected class under § 1981 and Title VII. It is also undisputed that Hudson suffered an adverse action when her employment at the Firm was terminated. Indeed, Movants in their Motion for Summary Judgment do not challenge Hudson's ability to establish a *prima facie* case.

***Movants' Articulated Non-Discriminatory Reason*.**– Movants state, with supporting evidence, that Farrar decided by February 16, 2016, to terminate Hudson's employment because he perceived that she had a bad attitude. Farrar believed that Hudson's work performance and attitude declined after the Firm changed its policy

---

[4]    (...continued)

employment decision at issue, and (4) related to the employment decision at issue." *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 317-18 (5th Cir. Oct. 4, 2005) (citing *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000)). The only alleged comment by an individual with authority over the decision to terminate Hudson's employment was the "If I only offend one" comment by Farrar in October 2015 after the bowling event. This comment was not related to Hudson's race and was made four months before the decision to terminate her employment. Additionally, none of the racial slurs and abusive language identified by Hudson related to the decision to terminate her employment. As a result, Hudson has not presented direct evidence of race discrimination.

regarding overtime compensation. Other employees at the Firm complained to Farrar that Hudson was upset about the change and was saying negative things about the Firm. Based on his perception that Hudson had a bad attitude and was communicating her negativity to other Firm employees, Farrar decided on February 16, 2016, to terminate Hudson's employment. This satisfies Movants' burden to articulate a legitimate, non-discriminatory reason for the decision to terminate Hudson's employment.

**_Pretext_.**– Hudson has the burden to present evidence of pretext. "When evaluating pretext, the focus is on the employer's motivation for the adverse employment action, not whether the employer acted wisely or based its decision on an accurate understanding of the facts." *Plumbar v. S. Texas Coll. of Law*, 2017 WL 2844030, *4 (S.D. Tex. July 3, 2017). Title VII does not require objectively fair-minded or well-reasoned business decisions and, instead, requires only that employers refrain from making business decisions on a statutorily prohibited basis. *See id.* (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)). It is not sufficient that a plaintiff present evidence that raises a genuine issue of material fact regarding whether the employer's decision to take an adverse employment action against her was good business, or whether the employer was wrong about the underlying facts. *See id.* "The question is whether the employer had

a good-faith belief that the facts that motivated the adverse action were true and warranted the action." *Id*. (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)).

Hudson has not presented evidence to raise a genuine issue of material fact regarding pretext. Indeed, in her Response, Hudson does not address the "legitimate, non-discriminatory reason" Movants articulate in their Motion for Summary Judgment. Instead, Hudson argues that the "allegedly 'non-discriminatory reason' for termination (stealing time)" was a pretext because she did not steal time from the Firm.[5] *See* Hudson Response, pp. 32-34.

***Conclusion on Race Discrimination Claim***.– Movants have articulated a legitimate, non-discriminatory reason for the decision to terminate Hudson's employment as a paralegal at the Firm. Hudson has failed to present evidence that raises a genuine issue of material fact regarding whether the ***articulated reason*** is a

---

[5]     The Firm has stated that it believed the discrepancies between Hudson's time records and the parking garage records provided an additional reason to terminate her employment. Hudson's argument and evidence regarding the discrepancies merely raise a genuine issue of material fact regarding whether the Firm was wrong about the facts underlying its belief that Hudson was falsifying her time records. The relevant issue, however, is whether the Firm had a good-faith belief that Hudson was falsifying time records and a good-faith belief that the facts supporting that belief were true and warranted her discharge. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010); *Plumbar v. S. Texas Coll. of Law*, 2017 WL 2844030, *4 (S.D. Tex. July 3, 2017).

pretext for unlawful race discrimination.  As a result, Movants are entitled to summary judgment on Hudson's race discrimination claim.

**B.**    **Hostile Work Environment Claim**

To establish a *prima facie* case of a racially hostile work environment, Hudson must present evidence that: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the [Firm] knew or should have known of the harassment and failed to take prompt remedial action."  *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 2017 WL 5325807, *4 (5th Cir. Nov. 13, 2017) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).  Where, as here, the claim is that a supervisor harassed the employee, the plaintiff need not satisfy the fifth element.  *See Caldwell v. Lozano*, 689 F. App'x 315, 322 (5th Cir. May 12, 2017).

Hudson has satisfied the first element of her *prima facie* case.  It is undisputed that Hudson, an African-American, is a member of a protected class.

The second and third elements require evidence that Hudson was subjected to unwelcome harassment and that the unwelcome harassment was based on her race. In the hostile work environment section heading of Hudson's Response, she identifies multiple acts of harassment on which she bases her claim, although she does not

discuss most of the incidents in the text of her Response.  She identifies Farrar & Ball filing a lawsuit against her and confirming information regarding the lawsuit to the legal publication Law360.  Hudson mentions "photographing her" which apparently refers to an incident Hudson mentioned earlier in her Response that "photographs were taken of [Hudson] in her religious attire."  *See* Hudson Response, p. 13.  She mentions only summarily "demeaning and berating conduct of Romagosa."  There is no evidence that suggests any of these events was based on Hudson's race.  Indeed, her allegation appears to suggest that Hudson was photographed because of her religious attire, not because of her race.  "Poor treatment without more is not sufficient to show harassment based on race," even if the employee believes race was the motivating factor for the poor treatment.  *See Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 2017 WL 5325807, *4 (5th Cir. Nov. 13, 2017).

Hudson relies heavily on the comment by Farrar following the October 2015 bowling event, when Farrar stated "If I only offend one I call that a victory."  Hudson argues that the comment was racist because "one" referred to African-Americans.  The uncontroverted evidence regarding the context of the statement, however, refutes Hudson's argument.  Farrar was discussing the incident with Debbie Brooks, the Firm's bookkeeper, to inquire whether any other Firm employee had been offended by Farrar's "broke ass bitch" comment.  In this context, it is clear that Farrar's

comment related to "one" employee. Hudson's unsupported speculation regarding Farrar's comment does not raise a fact dispute regarding whether the comment was based on Hudson's race.

Hudson relies also on the emails written by Romagosa. Hudson cites emails dated September 14 and September 17, 2013, in which Romagosa uses a racial slur to describe an African-American who attacked him, resulting in Romagosa's hospitalization. Hudson also cites an email dated February 18, 2014, in which Romagosa uses a racial slur in an email string regarding the hiring of someone named "Vera" who "got 290k." *See* Email, Exh. 12 to Hudson Response. These emails do not constitute harassment of Hudson. They were not written to or sent to Hudson by anyone at the Firm, and they do not relate to Hudson or her employment. Indeed, Hudson would not have been aware of their existence except that a co-worker gave her copies of them.

Hudson alleges also that on February 17, 2016, Romagosa referred to her under his breath using a racial slur. This clearly constitutes unwelcome harassment based on Hudson's race. As a result, Hudson has presented evidence of this single incident of race-based harassment by Romagosa.

With reference to the fourth element of a *prima facie* case of a racially hostile work environment, harassment affects a "term, condition, or privilege of employment"

only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*. (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 257 (5th Cir. July 19, 2011) (citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)). To have an actionable claim, Hudson "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *See Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)). Relevant factors regarding whether conduct is "severe or pervasive" include "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Frank*, 347 F.3d at 138; *see also Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005).

In this case, Hudson has presented evidence of a single incident of race-based harassment – the racial slur used by Romagosa on February 17, 2016. This comment, while unquestionably offensive, was a single incident and was not physically

threatening or humiliating.  Indeed, Hudson stated in her EEOC Charge that the comment was made by Romagosa under his breath.  There is no evidence that the comment unreasonably interfered with Hudson's work performance, particularly since it was allegedly made the day after Farrar decided to terminate Hudson's employment.

Hudson has failed to present evidence that raises a genuine issue of material fact in support of her racially hostile work environment claim.  *See, e.g., Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. Oct. 4, 2005) (a few racial slurs from supervisors was insufficient to create a hostile work environment).  As a result, Movants are entitled to summary judgment on this claim.

## C.  Retaliation Claim

"An employee establishes a *prima facie* case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII [or § 1981], (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."  *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018) (internal quotations and citation omitted);  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  A retaliation claim requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Therefore, to satisfy the "causal link" requirement of a

retaliation claim, the plaintiff must show that she would not have suffered the adverse employment action but for having engaged in protected activity. *See Standley v. Rogers*, 680 F. App'x 326, 327 (5th Cir. Mar. 10, 2017). "[T]emporal proximity alone is insufficient to prove but for causation." *United States ex rel King v. Solvay Pharm., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017).

Hudson has presented evidence that she engaged in protected activity under Title VII when she filed her Charge of Discrimination with the EEOC on March 3, 2016. She has also presented evidence that she suffered an adverse action when her employment at the Firm was terminated on March 11, 2016. Hudson, however, has failed to present evidence that raises a genuine issue of material fact regarding the causal connection between her EEOC filing and her discharge. The evidence is uncontroverted that Farrar decided on February 16, 2016, to fire Hudson. The evidence is further undisputed that Farrar advised Romagosa by email that same day of his decision to terminate Hudson's employment. Hudson admitted during her deposition that Rhonda Herbert, another paralegal at Farrar & Ball, informed Hudson before Hudson filed her EEOC Charge of Discrimination that the Firm was going to fire her. *See* Hudson Depo. at p. 175. Because Farrar made the decision to fire Hudson before he knew about her EEOC Charge, indeed before she filed it, Hudson has not shown that "but for" the EEOC Charge she would not have been fired by the

Firm.  *See, e.g., Wiley v. Am. Elec. Power Serv. Corp.*, 287 F. App'x 335, 339 (5th Cir. July 17, 2008); *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. Sept. 12, 2007).

In her Response to the Motion for Summary Judgment, Hudson identifies a December 11, 2015 email to Romagosa as protected activity.  *See* Response, p. 26. Hudson did not identify or include the email as an exhibit to her Response.  In her deposition, Hudson admitted that she never complained about race discrimination to Farrar or Ball, the equity partners of the Firm.  *See* Hudson Depo., p. 165.  She further admitted that the email to Romagosa did not mention the word "race."  *See id.* at p. 166.

Movants are entitled to summary judgment on Hudson's retaliation claim.

## V.   SUPPLEMENTAL JURISDICTION

The Court has granted judgment in Movants' favor on Hudson's federal claims. "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."  *Watson v. City of Allen, Tex.*, 821 F.3d 634, 642 (5th Cir. 2016) (quoting *Brookshire Bros. Holding v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)).  In this case, pursuant to 28 U.S.C. § 1367(c)(3) and governing Fifth Circuit authority, the Court declines to exercise supplemental jurisdiction over the pendent state law claims

asserted by Farrar & Ball and by Hudson. The Court will remand those claims to Texas state court.

## VI.   <u>CONCLUSION AND ORDER</u>

Hudson has failed to present evidence that raises a genuine issue of material fact to support her § 1983 claim, her § 1981 claims of race discrimination, hostile work environment, and retaliation, or the corresponding Title VII claims. As a result, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 54] is **GRANTED** as to all pending federal claims. It is further

**ORDERED**, pursuant to 28 U.S.C. § 1367(c)(3), that the pendent state law claims are **REMANDED** to the 129th Judicial District Court of Harris County, Texas.

SIGNED at Houston, Texas, this **12<u>th</u>** day of **March, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE